# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 17, 2015

Plaintiff-Appellee,

v

No. 321742
Wayne Circuit Court

BLAKE KEVIN STOVER,

LC No. 13-009768-FH

Defendant-Appellant.

Before: JANSEN, P.J., and CAVANAGH and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to do great bodily harm, MCL 750.84, felon in possession of a firearm, MCL 750.224f, felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] Defendant was sentenced, as a third habitual offender, MCL 769.11, to 100 months to 20 years' imprisonment for the assault with intent to do great bodily harm conviction, 2 to 10 years' imprisonment for the felon in possession of a firearm conviction, one to eight years' imprisonment for the felonious assault conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. DEFENDANT'S PRINCIPAL APPELLATE BRIEF

Defendant first argues that the trial court erred in scoring offense variables (OVs) 4, 7, 9, and 12. We conclude that the trial court erred in scoring OVs 4 and 12 but did not err in scoring OVs 7 and 9. Because the scoring errors do not affect the guidelines range, resentencing is not required.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as

---

[1] Defendant was also charged with first-degree home invasion, MCL 750.110a(2), but the jury could not reach agreement regarding that charge and the trial court therefore declared a mistrial with respect to that charge. The prosecutor decided not to pursue a retrial on that charge, and the trial court dismissed the charge.

-1-

found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).

OV 4 addresses psychological injury to a victim. MCL 777.34(1); *People v Lockett*, 295 Mich App 165, 182; 814 NW2d 295 (2012). OV 4 requires a 10 point assessment if "serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Zero points are to be assessed if "no serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(b). A trial court must assess "10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2). "There must be some evidence of psychological injury on the record to justify a 10-point score." *Lockett*, 295 Mich App at 183. A victim's expression of fearfulness or anger may comprise sufficient evidence of a psychological injury. *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012). In this case, the record is devoid of evidence that the victim, Mark Griggs (Mark), suffered a serious psychological injury. In deciding to assess 10 points for OV 4, the trial court stated that Mark "took the injury and took the assault, and I will give ten points for psychological injury to him." But as the prosecutor concedes on appeal, the record does not contain a victim impact statement, a statement by Mark at sentencing, or any statement from Mark at trial about the impact of the crime on him. Mark testified at trial that he was only "sort of" afraid during the incident because he felt certain that defendant was not going to shoot him in the head. Overall, the record in this case does not support a finding of a serious psychological injury. The trial court therefore erred in assessing 10 points under OV 4.

OV 7 addresses aggravated physical abuse. MCL 777.37(1); *Hardy*, 494 Mich at 439. This OV requires a score of 50 points if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" MCL 777.37(1)(a). In *Hardy*, 494 Mich at 440, our Supreme Court addressed the fourth category for which 50 points may be assessed under OV 7, i.e., "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). The *Hardy* Court "conclude[d] that it is proper to assess points under OV 7 for conduct that was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 441. "The relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Id*. at 443-444. The Court found that racking a shotgun during a carjacking to make the victim fear an imminent violent death supported an assessment of 50 points for OV 7. *Id*. at 445. Also, threatening and striking victims with what appeared to be a sawed-off shotgun went beyond what was necessary to commit an armed robbery and was intended to increase the victims' fear by a considerable amount, thus supporting a 50-point assessment for OV 7. *Id*. at 446-447.

At sentencing, the prosecutor argued that 50 points should be assessed for OV 7 because Mark "was pistol-whipped after having been shot. The gun was pointed at his face, and he was ordered to get to his knees. When he didn't comply, that's actually when he got shot." Defense counsel asked, "Well, at what point does it become excessive, Judge?" The trial court stated that "it became excessive as soon as he came in the house." The trial court continued:

*THE COURT*:  I mean, it really got to be excessive.  This was . . . Then he comes in with two buddies, and the other buddy's got the gun.  He gets the gun and he – you know, and this guy is trying to protect himself and his sister.

And his sister who really kind of didn't want to turn on her own brother.  But she most certainly did not give us really honest testimony.  And as soon as that young man tried to – he had to put, what, was it a mattress and other things up to the door to keep this man from coming back in?

*MR. PENNEY* [the prosecutor]:  It was a couch and a kitchen table, your Honor.

*THE COURT*:  Okay.  You get the fifty points. . . .

The trial court did not clearly err in finding that a preponderance of the evidence supported a 50-point assessment under OV 7.  Shooting Mark in the leg was the minimum conduct necessary to commit assault with intent to do great bodily harm.  Defendant committed conduct beyond this minimum level necessary to commit the offense.  After an earlier encounter that led Mark to put furniture up against the apartment door to block defendant's entrance, defendant forced his way into the apartment with two other men, approached Mark's sister, Markeda Griggs (Markeda), while unzipping his pants as if he was going to rape her, obtained a gun from one of his cohorts, ordered Mark to kneel, pointed the gun at Mark's head, shot him in the leg, and then hit Mark in the head with the gun.  Defendant thereby engaged in acts beyond the minimum required to commit the crime.  Although Mark testified that he did not believe defendant was actually going to shoot him in the head, the relevant inquiry is whether defendant's conduct was *intended* to make Mark's fear or anxiety greater by a considerable amount.  The evidence was more than adequate to support such a finding.  The 50-point assessment for OV 7 was not clearly erroneous.

OV 9 addresses the number of victims.  MCL 777.39(1); *People v Fawaz*, 299 Mich App 55, 62; 829 NW2d 259 (2012).  A trial court must assess 10 points if "there were two to nine victims who were placed in danger of physical injury or death[.]"  MCL 777.39(1)(c).  An assessment of zero points is required if "there were fewer than two victims who were placed in danger of physical injury or death[.]"  MCL 777.39(1)(d).  Each person who was placed in danger of physical injury or loss of life must be counted as a victim.  MCL 777.39(2)(a); *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004); *People v Waclawski*, 286 Mich App 634, 682; 780 NW2d 321 (2009).

At sentencing, the prosecutor argued that there were three potential victims: Mark, Markeda, and Markeda's three-year-old son.  The trial court indicated that it would count Markeda's son and Mark as victims but that it would not include Markeda as a victim.[2]  The trial

---

[2] The trial court had earlier opined that "something ought to wake [Markeda, who was defendant's girlfriend and the mother of his child,] up to reality.  She couldn't see that this was a

court stated that Markeda's son "had to witness this kind of crazy behavior. That has an impact on the child later in life." The trial court thus assessed 10 points for two victims under OV 9. On appeal, defendant argues that Markeda's son was not placed in danger of physical injury or death because the child was standing behind defendant when defendant shot Mark, and the gun was never pointed at the child. This argument ignores the fact that bullets can ricochet. The child and Mark were both placed in danger of physical injury or death when defendant fired the gun inside the apartment.[3] The assessment of 10 points under OV 9 was not clearly erroneous. In any event, as explained later, this assessment does not affect the guidelines range because we uphold the 50-point assessment for OV 7.

OV 12 addresses contemporaneous felonious criminal acts. MCL 777.42(1). Under OV 12, a court must assess 25 points if "three or more contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(1)(a). A felonious criminal act is contemporaneous if it occurred within 24 hours of the sentencing offenses and it has not and will not result in a separate conviction. MCL 777.42(2)(a); *People v Light*, 290 Mich App 717, 722; 803 NW2d 720 (2010). It must be separate from the behavior establishing the sentencing offenses. *Id*. at 723.

Defendant argues on appeal that he should not have been assessed 25 points for OV 12 because the only crime of which he was not convicted was first-degree home invasion. The prosecutor agrees that 25 points should not have been assessed under OV 12 but argues that 10 points should have been assessed for two contemporaneous felonious criminal acts involving crimes against a person. See MCL 777.42(1)(b). We agree with the prosecutor that a 10-point assessment for OV 12 was proper. The evidence supported a finding that defendant committed second-degree child abuse against Markeda's son because, while the child was present, defendant fought with the child's mother, acted as if he was going to rape her, shot the child's uncle, and hit the child's uncle in the head with the gun. See MCL 750.136b(3)(b) (a person is guilty of second-degree child abuse if "[t]he person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results."); MCL 750.136b(3)(c) (a person is guilty of second-degree child abuse if "[t]he person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results."). Defendant was not charged with or convicted of second-degree child abuse. Also, although the jury did not reach a verdict on the first-degree home invasion charge, the trial court could have found that this offense was proven by a preponderance of the evidence. See *People v Harris*, 190 Mich App 652, 663; 476 NW2d 767 (1991) (noting that even criminal acts for which a defendant is acquitted may be considered in scoring the sentencing guidelines). Thus, an assessment of 10 points under OV 12 for two contemporaneous felonious criminal acts involving crimes against a person was appropriate. But even if zero points are assessed under OV 12, it

---

bad situation from the beginning, and recognize that this was the kind of person she didn't need to be around. That's on her."

[3] The trial court's discussion of the impact on the child later in life from having witnessed these events was inapt in respect to OV 9 because this comment concerns psychological trauma rather than physical injury or death. But the comment was harmless because, as discussed, the child was properly counted as a victim given that he was placed in danger of physical injury or death.

would not change the guidelines range given that we are upholding the 50-point assessment for OV 7.

Eliminating the 10-point assessment for OV 4 and subtracting 15 points from the OV 12 assessment do not change defendant's guidelines range. Correction of these scoring errors reduces defendant's total OV score from 155 points to 130 points, leaving him at the same OV level of VI and in the D-VI cell of the Class D grid. His sentencing guidelines range as a third habitual offender therefore remains 34 to 100 months. See MCL 777.65; MCL 777.21(3)(b). Indeed, because defendant does not challenge the scoring of OVs that contribute 60 points of his OV total, and because 75 points are the minimum needed to put defendant at OV level VI, eliminating all of the challenged OV points other than the 50 points for OV 7 would still leave defendant at OV level VI and would leave his guidelines range the same. That is, any changes in the assessments for OVs 4, 9, and 12 would have no effect on the guidelines range given that the OV 7 assessment remains unaltered. Because the scoring errors with respect to OVs 4 and 12 do not affect the guidelines range, resentencing is not required. *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006).

Defendant next argues that defense counsel was ineffective for failing to challenge the scoring of OVs 4, 9, and 12. We conclude that defendant is unable to establish the prejudice component of this claim.

To preserve a claim of ineffective assistance of counsel, a defendant must move in the trial court for a new trial or an evidentiary hearing. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Defendant did not file either such motion below. Therefore, the issue is not preserved. "A claim of ineffective assistance of counsel is a mixed question of law and fact." *Id*. Findings of fact are reviewed for clear error, but the ultimate constitutional issue for an ineffective assistance claim is reviewed de novo. *Id*. Because the issue is unpreserved, this Court's review is for mistakes apparent on the existing record. *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). An appellate court deciding an ineffective assistance claim need not address both components of the ineffective assistance inquiry if the defendant makes an insufficient showing of one of the components. *Strickland v Washington*, 466 US 668, 697; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*.

As discussed earlier, the trial court properly assessed 10 points for OV 9. Defense counsel was not ineffective for failing to make a meritless argument or raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Although the trial court erred in scoring OVs 4 and 12, those errors did not affect the guidelines range given that OVs 7 and 9 were properly scored. Therefore, even if defense counsel was ineffective for failing to raise objections to the scoring of OVs 4 and 12, defendant suffered no prejudice because the allegedly deficient performance did not affect his guidelines range. Moreover, the issue

concerning the scoring of OVs 4, 7, 9, and 12 was ultimately preserved because defendant raised the issue in a motion to remand. Because the underlying issue has been preserved and fully reviewed, defendant has not established prejudice.

Defendant next argues that Michigan's sentencing guidelines system is unconstitutional under *Alleyne v United States*, ___ US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). We conclude that defendant has abandoned this issue by failing to adequately brief it. Further, any constitutional error arising from the scoring of the OVs was harmless beyond a reasonable doubt because the trial judge's comments at sentencing indicate that the constraint of the sentencing guidelines protected defendant from receiving a more severe sentence. A Sixth Amendment challenge presents a question of constitutional law that is reviewed de novo. *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015).

In *Lockridge*, 498 Mich at 364, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient under the Sixth Amendment to the extent that "the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne*." As a remedy for this constitutional violation, our Supreme Court "sever[ed] MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory." *Id*. The *Lockridge* Court also struck "down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure." *Id*. at 364-365. The Court held "that a guidelines minimum sentence range calculated in violation of *Apprendi* [*v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000),] and *Alleyne* is advisory only and that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Id*. at 365. Courts must continue to determine the applicable guidelines range and take it into account at sentencing. *Id*.

For cases that were held in abeyance for *Lockridge*, most of which involved challenges that were not preserved in the trial court, our Supreme Court held that a defendant's Sixth Amendment right is impaired if the "facts admitted by a defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id*. at 395. "[A]ll defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id*. "[I]n cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Id*. at 397. Such remands are warranted only in cases in which the

defendant was sentenced on or before July 29, 2015, the date of the *Lockridge* decision. *Id.*[4] On remand,

> a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Id.* at 398 (quotation marks and citations omitted).]

In the present case, defendant preserved his *Lockridge* issue by raising it in his motion to remand. In *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 321303, issued September 8, 2015); slip op at 9-10, this Court explained that a preserved *Lockridge* error is not structural and is therefore subject to the harmless beyond a reasonable doubt standard. This Court further held that in order to determine whether the preserved *Lockridge* error in *Stokes* was harmless, the remand procedure described in *Lockridge* must be followed. *Id.* at 10. That is, the remand procedure described in *Lockridge* applies to both preserved and unpreserved pre-*Lockridge* sentencing errors. *Id.* at 11.

Defendant fails to present an argument establishing that he is entitled to relief under *Lockridge*.[5] Defendant merely makes a conclusory assertion that Michigan's guidelines system is unconstitutional under *Alleyne*, purports to adopt the arguments of the defendant in *Lockridge*, and requests resentencing. Completely missing from defendant's appellate presentation is any analysis establishing that the facts admitted by him or found by the jury verdict were insufficient to assess the minimum number of OV points necessary for his score to fall in the cell of the sentencing grid under which he was sentenced. See *Lockridge*, 498 Mich at 395. That is, defendant fails to specify *which* OVs he claims were scored on the basis of facts that he did not admit and that the jury did not find, and to then show that the deduction of those OV points would cause his total OV score to fall into a different cell of the sentencing grid. It is therefore impossible to review defendant's argument because he fails to make any effort to apply the holding in *Lockridge* to the facts of this case. A party may not simply announce a position or assert an error and leave it to this Court to discover and rationalize the basis of the party's claims, or to unravel and elaborate the party's arguments. *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Defendant has thereby abandoned this issue. *Id.*; see also

---

[4] For defendants sentenced after the *Lockridge* decision, traditional plain-error review will apply. *Lockridge*, 498 Mich at 397.

[5] Defendant's brief was filed before our Supreme Court issued its decision in *Lockridge*, and he has not filed a supplemental brief addressing this issue since *Lockridge* was issued.

*People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue.").

But even if defendant could show the trial court's sentencing discretion was unconstitutionally constrained by the sentencing guidelines, a remand for reconsideration of defendant's sentence would not be required in this case because the existing record establishes that any error was harmless beyond a reasonable doubt. The trial judge, who is no longer on the bench, made comments at sentencing indicating that she would have imposed a *more* severe sentence but for the constraint of the guidelines. The prosecutor at sentencing sought an upward departure from the guidelines range. The trial judge rejected the prosecutor's request to depart upward, stating, "I'm going to stay within the guidelines *because I don't want this case coming back*." (Emphasis added.) The trial judge then imposed a minimum sentence of 100 months, which was at the very top of the guidelines range. It is therefore clear from the trial judge's comments and from the sentence imposed that the constraint of the sentencing guidelines *protected* defendant from receiving a *higher* minimum sentence. A remand for reconsideration of defendant's sentence is therefore unnecessary because the existing record establishes that any error was harmless beyond a reasonable doubt; that is, the record unequivocally refutes any contention that defendant would have received a materially different sentence *more favorable to him* but for any unconstitutional constraint on the trial judge's sentencing discretion. Just as prejudice was not established in *Lockridge* where the defendant received an upward departure sentence that did not rely on the minimum sentence range from the improperly scored guidelines, *Lockridge*, 498 Mich at 394, defendant here was not prejudiced because any unconstitutional constraint resulting from the guidelines protected defendant from receiving a higher sentence, as evidenced by the trial judge's comments reflecting that the judge sentenced defendant within the guidelines to avoid having the case remanded for resentencing.

## II. DEFENDANT'S STANDARD 4 BRIEF

Defendant argues that he was denied the effective assistance of counsel at trial in numerous respects. We disagree. Because defendant failed to preserve this issue in the trial court by moving for a new trial or an evidentiary hearing, our review is for mistakes apparent on the existing record. *Petri*, 279 Mich App at 410.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *Ackerman*, 257 Mich App at 455. "Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Petri*, 279 Mich App at 411. This Court does not substitute its judgment for that of counsel regarding matters of trial strategy, nor does it assess counsel's performance with the benefit of hindsight. *Id*. The fact that a defense strategy ultimately fails does not establish ineffective assistance of counsel. *Kevorkian*, 248 Mich App at 373.

"Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). In general, the failure to call or question witnesses or to present other evidence constitutes ineffective assistance of counsel only if it deprives the defendant of a substantial defense. *Id*. A defense is

substantial if it might have made a difference in the outcome. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Defense counsel has a duty to undertake reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Any choice to limit an investigation "is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks omitted). The failure to conduct an adequate investigation comprises ineffective assistance of counsel if it undermines confidence in the outcome of the trial. *Russell*, 297 Mich App at 716. A defendant claiming ineffective assistance has the burden of establishing the factual predicate for the claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant first challenges defense counsel's failure to object to the admission of recorded jail telephone calls containing statements by defendant. But defendant fails to identify a specific ground on which he contends that defense counsel should have objected to the calls. A party may not simply announce a position or assert an error and leave it to this Court to discover and rationalize the basis of the party's claims, or to unravel and elaborate the party's arguments. *Kevorkian*, 248 Mich App at 389. Defendant has thereby abandoned this argument. *Id*.; see also *McPherson*, 263 Mich App at 136 ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue."). Defendant says that it was unreasonable for defense counsel to stipulate to the admission of the recorded calls because defense counsel had inadequate time to prepare a defense to the calls, but the record affords no basis for the assertion that defense counsel lacked adequate time to prepare a defense regarding the calls. Defendant contends that he tried talking about the issue with defense counsel and that the conversation "made it nowhere." Again, the record is devoid of support for this bare assertion. Defendant says that the jurors did not understand the relevance of the calls. Although the jurors asked to have some of the calls replayed and the jury foreperson asked the trial court about the "reason" for one of the conversations contained in the recorded calls, this does not establish that the jurors failed to understand the relevance of the calls, and even if it did, it would not establish that the recorded calls were inadmissible or that defense counsel's failure to object to the admission of the calls comprised deficient performance.

Next, defendant asserts that defense counsel should have moved to quash the home invasion charge before trial and that defense counsel then would have been able to negotiate a more favorable plea agreement for defendant than the one offered by the prosecutor. Defendant says that failing to move to quash the home invasion charge was unreasonable because defendant lived at the apartment that he was charged with invading. However, the record provides no basis to conclude that a motion to quash the home invasion charge would have succeeded. Mark testified at the preliminary examination that he lived at the apartment; that he did not give defendant permission to come into the apartment on the date of the incident; that, to the best of Mark's knowledge, Markeda also did not give defendant such permission; and that defendant no longer lived at the apartment on the date of the incident because he had moved out approximately two months earlier. The record therefore does not indicate that a motion to quash the home invasion charge would have succeeded. Defense counsel was not ineffective for failing to make a meritless argument. *Ericksen*, 288 Mich App at 201. Nor is there any support in the record for

defendant's assumption that the prosecutor would have offered a more favorable plea agreement if the home invasion charge had been quashed.

Defendant next contends that defense counsel failed to impeach Mark's trial testimony with prior inconsistent statements. Defendant asserts that Mark testified at the preliminary examination that defendant was not the shooter, whereas Mark testified at trial that defendant shot him. Defendant also says that Mark claimed at trial that defendant tried to rape Markeda and that Mark claimed that he had said this at the preliminary examination, but, defendant says, no such statement is in the police report or in the preliminary examination transcript. Defendant asserts that defense counsel failed to prepare and investigate this matter.

Defendant's assertion that Mark testified at the preliminary examination that defendant was not the shooter is incorrect. At the preliminary examination, Mark testified unequivocally that defendant shot him. Defendant cites a portion of the preliminary examination transcript in which defense counsel asked Mark whether anything prevented defendant from shooting Mark in the head, and Mark responded that "[m]aybe he didn't want to kill me. That's how he was prevented from shooting me." In context, it is clear Mark was speculating about why defendant did not shoot Mark *in the head*; Mark never suggested that defendant did not shoot him *in the leg*. Mark's preliminary examination testimony on this point was consistent with his trial testimony. Indeed, Mark similarly testified at trial that he was only "[s]ort of" afraid during the incident because he was sure that defendant was not going to shoot him in the head. Because there was no inconsistency, defense counsel was not ineffective for failing to impeach Mark on this point.

With respect to defense counsel's purported failure to impeach Mark on his testimony about defendant's actions suggesting he was going to rape Markeda, Mark testified at trial that defendant was pulling his pants zipper down as if he was going to rape Markeda but that he did not rape her. On cross-examination, Mark testified that he referred during his preliminary examination testimony to defendant acting like he was going to rape Markeda. The following exchange then occurred between defense counsel and the trial court:

> *MR. COOPER [defense counsel]*: Judge, to move things along I'll ask him to read it later. I don't want him to have to read the whole transcript.
>
> *THE COURT*: There's no impeachment for something that's left out.
>
> *MR. COOPER*: Well, there's impeachment for a person who said he said something he didn't say.
>
> *THE COURT*: That's the whole point. You have to prove it. You're the one who has to present the evidence, so unless you can read an inconsistent statement. I don't argue with you, remember? I rule and you move on.
>
> *MR. COOPER*: And you know I know.
>
> *THE COURT*: Okay.

Thus, contrary to defendant's argument, the record reflects that defense counsel did seek to impeach Mark on this matter, and the trial court rejected defense counsel's attempt to do so. Moreover, although Mark did not specifically testify at the preliminary examination that defendant was acting as if he was going to rape Markeda, Mark did seem to allude to the matter during his preliminary examination testimony by stating that, after coming into the apartment with his two accomplices, defendant "went towards my sister. You know, he was acting like about to do something. Then he didn't do it then he start smacking her up and then he told his other friend to hit [Mark]." Given this apparent allusion to the behavior at issue, defendant has failed to establish that any further effort to impeach Mark on this point would have succeeded, let alone that it would have created a reasonable probability of a different outcome.

Next, defendant contends that defense counsel failed to obtain discovery. According to defendant, defense counsel failed to request discovery on the basis of a mistaken belief that the state was required to take the initiative to turn over all inculpatory evidence to the defense. Further, defendant says that defense counsel failed to object to the admission of photographs, that there was no strategy in failing to object to the admission of this supposedly new evidence of which defense counsel knew nothing, and that defense counsel could not prepare a defense to the photographs without investigating them. There is no support in the record for defendant's contention that defense counsel failed to request or obtain discovery. Nor is there any basis in the record to conclude that defense counsel knew nothing about the photographs at the time of their admission or failed to investigate the photographs. Defendant has therefore failed to establish the factual predicate for this claim. *Carbin*, 463 Mich at 600. Defendant identifies no legal basis on which defense counsel could have objected to the admission of the photographs. A party may not simply announce a position or assert an error and leave it to this Court to discover and rationalize the basis for the party's claims, or to unravel and elaborate the party's arguments. *Kevorkian*, 248 Mich App at 389. Defendant has abandoned this argument. *Id*.

Defendant next challenges defense counsel's failure to cross-examine the officer-in-charge, Detrick Mott, who testified about the collection of evidence and his observation of the crime scene. Defendant says that Mott stated in a police report that there were two pools of blood on the floor where Mark was shot, but, defendant states, the photographs admitted at trial showed no signs of blood. Defendant suggests that defense counsel should have therefore impeached Mott with the photographs of the crime scene and asked Mott why the pools of blood were not shown in the photographs. Defendant also suggests that Mott should have been questioned about whether defendant's fingerprints were recovered from any items in the apartment. Defendant's argument lacks support in the record. Mott did not testify at trial that there were two pools of blood on the floor where Mark was shot, and the police report to which defendant refers is not in the record. Hence, there is no basis in the record to conclude that defense counsel could have impeached Mott on this point. Defendant does not identify which items recovered from the apartment should have been the subject of inquiry of Mott concerning whether defendant's fingerprints were recovered. Defendant fails to explain how any cross-examination regarding his fingerprints would have been useful to his defense, particularly given that defendant had previously lived in the apartment and it is therefore unclear what value any testimony concerning his fingerprints would have. Defendant has not established that he was deprived of a substantial defense by the failure to cross-examine Mott. *Russell*, 297 Mich App at 716.

-11-

Defendant next argues that he was denied his Fifth Amendment right to be free from double jeopardy because defense counsel failed to argue for a lesser included offense instruction. Defendant asserts that "[b]oth charges hold the same elements and were charge [sic] for the same offense. Counsel's failure to ask for the lesser charge instruction could not have been part of strategy." Defendant does not identify to which charges he is referring or how the failure to request a lesser included offense instruction denied him the right not to be placed in jeopardy twice for the same offense. Defendant has abandoned this argument by failing to provide sufficient elaboration. *Keovrkian*, 248 Mich App at 389. Assuming that defendant is referring to his convictions for both assault with intent to do great bodily harm and felonious assault, his double jeopardy argument concerning those offenses lacks merit for the reasons later. Defense counsel was not ineffective for failing to make a meritless argument or raise a futile objection. *Ericksen*, 288 Mich App at 201.

Next, defendant contends that defense counsel failed to adequately argue exculpatory facts to the jury, including by impeaching Mark on his different versions of events, pointing out that there was no medical report admitted to show that Mark was injured, addressing the lack of blood at the crime scene, highlighting the fact that Mark had to wait an hour after being shot for the police to arrive and then 30 more minutes for an ambulance to transport him to the hospital, and noting that Mark and Markeda's neighbor, Decarla Nabors, did not notice anything out of the ordinary about Mark when Mark and Markeda knocked on her door after the shooting. Defendant says there was no physical evidence that Mark was shot, such as blood or a medical report. Defendant's argument that defense counsel's performance was deficient for failing to impeach Mark on his supposedly different versions of events lacks merit for the reasons discussed earlier. Also, defense counsel may have reasonably declined to highlight Nabors's failure to notice that Mark was shot and the absence of a medical report and of proof that there was blood at the crime scene. Defendant's argument overlooks the fact that it was undisputed that Mark was shot; the only point of contention was whether defendant was the person who shot him. Defendant himself testified that Mark was shot. Rather than claiming that Mark was not shot, defendant testified that it was one of the two men who accompanied him to the apartment who fired the shot. Given the undisputed fact that Mark was shot, it is unclear why defendant thinks defense counsel should have highlighted Nabors's testimony or the absence of a medical report or of blood at the crime scene. Defense counsel reasonably opted to focus in closing argument on the theory that defendant was not the shooter rather than to suggest that Mark was not shot. Defense counsel nonetheless did emphasize to the jury in closing argument the apparently minimal extent of Mark's injuries by noting that the bullet was found in the wall and that Mark spent only three hours in the hospital, suggesting that the gunshot wound was either a "through and through" or a "graze[.]" Accordingly, the record does not support defendant's contention that defense counsel's performance was deficient for failing to argue exculpatory facts to the jury.

Defendant next argues that the trial court's clerk did not properly administer the juror oath after the jury was selected. We disagree. A defendant must object in the trial court to the failure to properly swear the jury in order to preserve the issue for appellate review. *People v Cain*, 498 Mich 108, 114; 869 NW2d 829 (2015). Defendant did not object to the juror oath in the trial court. Therefore, the issue is unpreserved. Because defendant failed to preserve this issue, this Court's review is for plain error affecting substantial rights. *Id*. at 116. Defendant must establish that (1) an error occurred, (2) the error was clear or obvious, and (3) the error

affected the outcome of the proceedings. *Id*. If those requirements are satisfied, an appellate court must exercise its discretion in deciding whether to reverse. *Id*. Reversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*.

MCR 2.511(H)(1) provides:

(1) The jury must be sworn by the clerk substantially as follows:

"Each of you do solemnly swear (or affirm) that, in this action now before the court, you will justly decide the questions submitted to you, that, unless you are discharged by the court from further deliberation, you will render a true verdict, and that you will render your verdict only on the evidence introduced and in accordance with the instructions of the court, so help you God."

Also, MCL 768.14 states:

The following oath shall be administered to the jurors for the trial of all criminal cases: "You shall well and truly try, and true deliverance make, between the people of this state and the prisoner at bar, whom you shall have in charge, according to the evidence and the laws of this state; so help you God."

The juror oath set forth in MCR 2.511(H)(1) imposes three duties on jurors: "(1) to 'justly decide the questions submitted,' (2) to 'render a true verdict,' and (3) to do these things 'only on the evidence introduced and in accordance with the instructions of the court.' " *Cain*, 498 Mich at 121. In *Cain*, 498 Mich at 124 n 6, our Supreme Court emphasized that MCR 2.511(H)(1) requires the juror oath to be given in "substantially" the form prescribed in the rule. That is, "the precise language of the oath set forth in MCR 2.511(H)(1) is not necessarily required." *Id*. Although jurors have historically been sworn for as long as the institution of trial by jury has existed, "the precise language of the oath used to swear the jury has never been a 'fixed constant,' as is evidenced by the fact that our own court rule, MCR 2.511(H)(1), and statute, MCL 768.14, contain differently worded oaths." *Id*. at 124-125 n 6.

In *Cain*, the clerk mistakenly read the wrong oath by giving the oath for prospective jurors rather than the oath that is to be given after the jury is selected. *Id*. at 113. Our Supreme Court held that the failure to give the proper oath to the jury did not require reversal because the absence of the oath did not seriously affect the fairness, integrity, or public reputation of the proceedings. *Id*. at 126-127. Among other considerations, the Court noted that "[o]ne of the primary purposes of the oath – to impart to the members of the jury their duties as jurors – was alternatively fulfilled in large part by the trial court's instructions prescribing the particulars of the jurors' duties." *Id*. at 122. For example, the trial court in *Cain* instructed the jurors before the swearing of the oath that "I will now ask you to stand and swear to perform your duty to try the case justly and to reach a true verdict." *Id*. And, before giving the final instructions, the trial court in *Cain* told the jurors, "Remember that you have taken an oath to return a true and just verdict based only on the evidence and my instructions on the law." *Id*. During its final instructions, the trial court in *Cain* instructed the jury that it "was to decide the case on the basis of the evidence presented during the trial and the law as the court gave it to them, setting aside

all bias and prejudice." *Id*. at 122-123. Our Supreme Court found that "[t]hese instructions encompassed, in even greater detail, duties equivalent to those prescribed in the oath." *Id*. at 123.

In the present case, the clerk administered an oath that substantially conformed to the oath set forth in MCR 2.511(H)(1). The jurors took the following oath:

> *THE CLERK*: Could you please all stand and raise your right hand?
>
> Do you solemnly swear to truthfully deliberate this case according to the evidence and the laws of this state?
>
> *THE JURY*: (IN CONSORT) I do.
>
> *THE CLERK*: Thank you.

The administration of this oath assured that the jurors understood their solemn obligation to render a true verdict according to the evidence introduced and the laws of this state. *Cain*, 498 Mich at 121. The oath given in this case is sufficiently similar to that required by MCR 2.511(H)(1) that there was no clear or obvious error in the administration of the oath.

But even if the oath was somewhat imperfect because it did not contain language specifically referencing the duty to justly decide the questions submitted and did not explicitly state that the court's instructions on the law must be followed, any such error would not require reversal because it did not seriously affect the fairness, integrity, or public reputation of the proceedings. As in *Cain*, the purpose of imparting the required duties to the jurors was alternatively fulfilled in large part by the trial court's instructions. Before the jury was sworn, the trial court stated, "You'll now be asked to stand and swear to justly try this case and enter a true verdict unless dismissed by the Court." And before giving the final instructions, the trial court told the jury, "Remember that you've taken an oath to return a true and just verdict based only on the evidence and my instructions on the law." The court told the jury that it must not let sympathy or prejudice influence its decision. The jury was told that in deciding the case, the jury may only consider properly admitted evidence, and the court explained what constituted evidence. The court emphasized to the jury that it was the court's duty to instruct the jury on the law and that "[y]ou must take the law as I give it to you. . . . You must take all of my instructions together as the law you are to follow. . . . To sum up it is your job to decide what the facts of this case are, to apply the law as I give it to you, and in that way to decide this case." Therefore, like in *Cain*, the trial court's "instructions encompassed, in even greater detail, duties equivalent to those prescribed in the oath." *Cain*, 498 Mich at 123.

Further, it is notable that the oath given in this case, even if it was less than perfect, nonetheless was far closer to that required by MCR 2.511(H)(1) than was the oath given in *Cain* that our Supreme Court held did not require reversal. And, as noted in *Cain*, even an imperfect oath-swearing may have value "in terms of both its substance and the dignity and solemnity of the process." *Cain*, 498 Mich at 125 n 6. The jurors in this case took a solemn oath to "truthfully deliberate this case according to the evidence and the laws of this state[.]" This oath and the trial court's instructions provided the jurors with a proper sense of their obligations and an understanding of the dignity and solemnity of the proceedings. *Id*. at 123-124. Accordingly,

even if the oath given in this case was somewhat flawed such that it amounted to plain error, reversal is not required because the error did not seriously affect the fairness, integrity, or public reputation of the proceedings. *Id*. at 126-127.

Defendant next argues that a discovery violation occurred and that this violated his due process rights. We disagree. "For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant did not raise this issue in the trial court. Therefore, the issue is not preserved.

"A trial court's decision regarding discovery is reviewed for an abuse of discretion." *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *People v Jackson*, 292 Mich App 583, 591; 808 NW2d 541 (2011). A defendant's claim that he was denied due process is reviewed de novo. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). A defendant must demonstrate that an error occurred, that the error was clear or obvious, and that the error affected the outcome of the lower court proceedings. *Id*. at 763. If these requirements are satisfied, an appellate court should exercise its discretion in deciding whether to reverse, and reversal is warranted only if the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*. at 763-764.

There is no general constitutional right to discovery in criminal cases. *People v Stanaway*, 446 Mich 643, 664; 521 NW2d 557 (1994). Nonetheless, "[d]efendants have a due process right to obtain evidence in the possession of the prosecutor if it is favorable to the accused and material to guilt or punishment. Material has been interpreted to mean exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id*. at 666 (citations omitted). See also *Schumacher*, 276 Mich App at 176 ("Due process requires the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests the disclosure."). The test for whether discovery items should have been provided to the defendant is whether they contain information that probably would have changed the outcome of the trial. *Id*., citing *Pennsylvania v Ritchie*, 480 US 39, 58; 107 S Ct 989; 94 L Ed 2d 40 (1987). To establish a due process violation related to the suppression of exculpatory evidence, a defendant must show:

> (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. [*Schumacher*, 276 Mich App at 177 (quotation marks omitted).]

In addition, MCR 6.201(A)(6) requires a party to provide, upon request, a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including photographs. The prosecutor also must provide, upon request, any exculpatory information or evidence known to the prosecutor and any written or recorded statements of the

defendant. MCR 6.201(B)(1), (3). Trial courts have discretion in fashioning a remedy for failure to comply with discovery orders or agreements regarding inculpatory evidence. See *People v Williams*, 188 Mich App 54, 58-59; 469 NW2d 4 (1991); *People v Taylor*, 159 Mich App 468, 487; 406 NW2d 859 (1987). In fashioning a remedy, a court should balance the interests of the courts, the public, and the parties; the exclusion of otherwise admissible inculpatory evidence is warranted only in the most egregious cases. *Id*. A nonconstitutional discovery violation requires reversal only if the defendant can establish that it is more probable than not that the violation was outcome determinative, meaning that the error undermined the reliability of the verdict. *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000).

There is no support in the record for defendant's contention that discovery violations occurred. Defendant asserts that he was not notified about the photographs or the jail phone call recordings that were introduced into evidence. The record is bereft of any support for this claim. Nor is there any indication that defendant requested the photographs or jail phone call recordings. There is therefore no basis to find that a violation of MCR 6.201(A)(6) or (B) occurred. Even if a discovery violation occurred, defendant fails to establish that the violation was so egregious that exclusion of the evidence was the appropriate remedy, *Taylor*, 159 Mich App at 487, or that the discovery violation was outcome determinative such that reversal is required, *Elston*, 462 Mich at 766. Defendant also has not established a due process violation because he fails to show that the evidence at issue was favorable to him, that he did not possess the evidence, and that the prosecution suppressed it. See *Schumacher*, 276 Mich App at 177. Even if the evidence was suppressed, defendant fails to present any argument establishing a reasonable probability of a different outcome if the evidence had been disclosed. See *id*. Defendant may not leave it to this Court to unravel and elaborate his arguments for him. *Kevorkian*, 248 Mich App at 389. Defendant has therefore abandoned this issue. *Id*.

Defendant next argues that his convictions and sentences for assault with intent to do great bodily harm and felonious assault violate the constitutional prohibition against double jeopardy. We disagree. "This Court reviews de novo questions of law, such as a double jeopardy challenge." *People v Gibbs*, 299 Mich App 473, 488; 830 NW2d 821 (2013).

> The prohibition against double jeopardy in both the federal and state constitutions protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. US Const, Am V; Const 1963, art 1, § 15; *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). The third of these protections exists to "protect the defendant from being sentenced to more punishment than the Legislature intended." *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005). [*Gibbs*, 299 Mich App at 488-489.]

"In *People v Smith*, 478 Mich 292, 315; 733 NW2d 351 (2007), our Supreme Court held that the 'same elements' test set forth in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), is the appropriate test to determine whether multiple punishments are barred by Const 1963, art 1, § 15." *People v Baker*, 288 Mich App 378, 381; 792 NW2d 420 (2010) (quotation marks omitted).

The *Blockburger* test focuses on the statutory elements of the offense, without considering whether a substantial overlap exists in the proofs offered to establish the offense. If each offense requires proof of elements that the other does not, the *Blockburger* test is satisfied and no double jeopardy violation is involved. [*Baker*, 288 Mich App at 382 (citations omitted).]

Defendant argues that his convictions of both assault with intent to do great bodily harm and felonious assault violate his right to be free from double jeopardy. However, our Supreme Court has rejected that very argument. In *People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007), the Supreme Court stated: "The Court of Appeals erred in concluding that the defendant's convictions for both assault with intent to commit great bodily harm (MCL 750.84) and felonious assault (MCL 750.82) violated his double jeopardy protections. Because the crimes have different elements, the defendant may be punished for each." In *People v Strickland*, 293 Mich App 393, 401-402; 810 NW2d 660 (2011), this Court noted that it is bound to follow our Supreme Court's holding in *Strawther*: "Our Supreme Court [in *Strawther*] has determined that convictions of both assault with intent to do great bodily harm less than murder and felonious assault do not violate the constitutional double jeopardy protections because the crimes have different elements. This Court is bound to follow decisions of our Supreme Court." (Citation omitted.) Accordingly, defendant's argument that his double-jeopardy rights were violated by his convictions and sentences for both assault with intent to do great bodily harm and felonious assault must be rejected.

Finally, defendant argues that he was denied a fair trial by the alleged errors in this case and that he is therefore entitled to a new trial. Defendant failed to preserve this issue by making a cumulative error objection before the trial court. *Metamora Water Serv, Inc*, 276 Mich App at 382. Therefore, our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. This Court reviews a claim of cumulative error to determine whether the combination of alleged errors denied the defendant a fair trial. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). The question whether the defendant was denied a fair trial is reviewed de novo. *People v Steele*, 283 Mich App 472, 478; 769 NW2d 256 (2009).

"The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). The cumulative effect of the errors must have been seriously prejudicial in order to conclude that the defendant was denied a fair trial. *Id.* Moreover, the cumulative effect must undermine confidence in the reliability of the verdict before a new trial is granted. *Dobek*, 274 Mich App at 106. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Id.* Because defendant has not established that any errors occurred at trial, there can be no cumulative effect of errors to warrant reversal. See *id.* Hence, defendant's claim of cumulative error must be rejected.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh